# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01417-SCT

*GENERAL AMERICAN LIFE INSURANCE COMPANY*

*v.*

*STEPHEN McCRAW*


| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2004 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | FRED L. BANKS, JR. |
| | BROOKE FERRIS |
| | RICHARD O. BURSON |
| | REBECCA L. HAWKINS |
| ATTORNEY FOR APPELLEE: | MARIANO JAVIER BARVIE' |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND REMANDED IN PART; REVERSED AND RENDERED IN PART. ON CROSS APPEAL: AFFIRMED - 06/07/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, P.J., DIAZ, P.J., AND CARLSON, J.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This case concerns when a principal must indemnify its agent.

### Facts and Course of Proceedings Below

¶2.     The facts that give rise to this case are undisputed. Steve McCraw, acting as an insurance agent for General American Life Insurance Company, sold a life insurance policy

to Harlena Jones. Jones later filed suit in Jasper County Circuit Court against McCraw and General American for a variety of reasons, including fraud, for selling her what is known as a "vanishing premium" policy. McCraw requested that General American defend him in the suit. The company declined, and McCraw filed a crossclaim against his principal for failure to indemnify and for emotional distress.

¶3. After verdict, General American settled with Jones, who had obtained a judgment against the company and in her favor. The jury trial resulted in separate verdicts of $150,000 in compensatory damages and one million dollars in punitive damages in favor of McCraw in his action against the company. General American filed a motion for judgment notwithstanding the verdict. The trial court granted the JNOV in part, vacating the punitive damage award, but declined to overturn the award of compensatory damages.

¶4. Aggrieved, General American appeals, citing errors in the trial, and McCraw cross-appeals the trial court's grant of JNOV vacating the punitive damages.

## Standard of Review

¶5. When reviewing the grant or denial of a JNOV, we consider the evidence in the light most favorable to the appellee, and give that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. *Blake v. Clein*, 903 So. 2d 710, 731 (Miss. 2005). If the facts considered in that light point so overwhelmingly in favor of the party requesting the JNOV that reasonable persons could not have arrived at a contrary verdict, we will reverse and render. *Id.*

¶6. If there is substantial evidence in support of the verdict we will affirm the denial of the JNOV. *Id.* "Substantial evidence" is information of such quality and weight that

2

reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions. *Id.* When examining questions of law, we conduct a de novo review. *Saliba v. Saliba*, 753 So. 2d 1095, 1098 (Miss. 2000).

### I. Indemnity between a Principal and an Agent.

¶7. We must first determine whether General American had a duty to indemnify McCraw.[1] Indemnification is not automatic, but can only be found after certain factors are met.

¶8. We previously addressed principal-agent indemnification in *Mutual Life Insurance Co. of New York v. Wesson*, where we detailed the requirements for a finding of indemnification where an agent is sued and there is no explicit contract for indemnification. 517 So. 2d 521, 535 (Miss. 1987). At the time, we held that "[u]nless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the illegality of his conduct to indemnify him for . . . expenses of defending actions by third persons brought because of the agent's authorized conduct, such actions being unfounded but not brought in bad faith." *Id.* (quoting Restat. 2d of Agency, § 439). Under that version of the Restatement, the conduct of the agent must have been authorized and the defense against the suit must have been successful.

¶9. In the time since *Wesson* was decided, the authors of the Restatement have clarified

---

[1] McCraw repeatedly refers to indemnification as a "duty to defend." However, that term is more properly used in the context of a relationship between an insured and an insurer. *See generally* **INA Ins. Co. v. Valley Forge Ins. Co.**, 150 Ariz. 248, 255 (Ariz. Ct. App. 1986) ("The duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable," while "[t]he duty to indemnify depends on whether the indemnitee engaged in actual, active wrongdoing").

the requirements to satisfy indemnification. The Restatement Third sets out that:

> A principal has a duty to indemnify an agent
> (1)      in accordance with the terms of any contract between them; and
> (2)      unless otherwise agreed,
>         (a)     when the agent makes a payment
>                (I)     within the scope of the agent's actual authority, or
>                (ii)    that is beneficial to the principal, unless the agent acts officiously in making the payment; or
>         (b)     when the agent suffers a loss that fairly should be borne by the principal in light of their relationship.

Restatement (Third) of Agency, § 8.14 (2006). This modern approach is more streamlined in its application than the previous test we adopted in *Wesson*, and provides better guidance to trial courts and practitioners in determining when indemnity is warranted. Accordingly, we adopt the Restatement Third approach to determining whether there is a duty to indemnify between a principal and an agent and abandon the previous test set out in *Wesson*.

### A) Is McCraw Entitled to Indemnity?

¶10.    Under the Restatement Third, there are four ways an agent may obtain indemnity from a principal. The applicable section to the evidence in this case is part 2(b). Whether McCraw suffered a loss which should fairly be borne by General American is a question for a jury to resolve. We note for clarification that "[a] principal does not have a duty to indemnify an agent against losses caused by unauthorized action taken by the agent that did not benefit the principal or losses caused solely by wrongful acts committed by the agent." Restatement (Third) of Agency, § 8.14 cmt. d (2006). Whether an agent was acting under the scope of authority is a question for the jury. *Pittman v. Home Indem. Co.*, 411 So. 2d 87, 90 (Miss. 1982).

¶11.    Accordingly, we reverse and remand for a jury to determine whether McCraw suffered

4

a loss which, in light of the relationship between McCraw and General American, should fairly be borne by the company.

### B) What damages are warranted in a claim for indemnification?

¶12.   At trial, McCraw was awarded $150,000 in actual damages and one million dollars in punitive damages for General American's refusal to indemnify him at trial. General American asked the trial court for a judgment notwithstanding the verdict regarding the punitive damages award. The trial court agreed with the motion and eliminated the punitive award. On appeal, General American argues that one may not recover more than the expenses and fees associated with obtaining indemnity, and that damages for emotional distress are improper. McCraw seeks reinstatement of the punitive damages award previously vacated by the trial court.

### I) Punitive Damages.

¶13.   McCraw's argument for punitive damages centers on an analogy to bad-faith refusal to defend. However, as noted *supra*, indemnification is not like the duty to defend, which may attach immediately upon suit. It is also not governed by what is contained in a complaint. "The right to indemnification for litigation expenses should not depend on the pleading choices of a third party, who through an excess of caution or optimism, may allege far more than he can prove at trial." *INA Ins. Co.*, 150 Ariz. at 254.

¶14.   Rather, it is generally accepted that principal-agent indemnity is a form of reimbursement, generally for legal fees. "[A] basic principle of indemnity" is that "[t]he right exists when there is a legal obligation on the indemnitee to pay or a sum is paid by him

5

for which the indemnitor should make reimbursement." *Id.* at 253; *see also **Zontelli & Sons, Inc. v. Nashwauk***, 373 N.W.2d 744, 755 (Minn. 1985) ("indemnity usually requires that one party reimburse another entirely for its liability"); ***Allen v. Standard Oil Co.***, 2 Ohio St. 3d 122, 126 (Ohio 1982) ("when an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor").

¶15.    "The traditional rule of strict indemnity requires the indemnitor to reimburse only actual loss and not to discharge the liability of the indemnitee . . . and thus one who agrees to indemnify against loss should not be required to pay more than what is actually lost." ***Hernandez v. Great American Ins. Co.***, 464 S.W.2d 91, 93-94 (Tex. 1971). Indemnification is for reimbursement of the costs related to defending the action and pursuing indemnification. Accordingly, punitive damages for refusing to immediately indemnify an agent are not recoverable. The trial court was therefore correct in granting General American's motion for JNOV on the issues of punitive damages, as punitive damages cannot be claimed in an action for indemnification.

### ii) Damages for Emotional Distress.

¶16.    A portion of the damages assessed against General American were for McCraw's alleged emotional distress. As established *supra*, indemnity is a vehicle for the reimbursement of an agent by a principal. Emotional distress damages are not a component of reimbursement and therefore cannot be awarded in an action for indemnification.

### iii) Attorney's Fees and Expenses.

¶17.    The comment to the Restatement Third notes that "[t]he agent's right [to indemnity] is limited to recovery of expenses and losses in amounts that are reasonable." Such expenses and losses include "attorney fees and expenses . . . incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor." *Allen*, 2 Ohio St. 3d at 126. McCraw asserted that he incurred $44,156.95 in attorneys' fees and expenses pursuing his defense. Previously, McCraw's attorneys' fees and expenses were bundled with the other damages. We remand for a jury trial to determine what expenses were actually incurred by McCraw; that amount is the value of his indemnity by General American if the jury concludes indemnification is warranted.

**Conclusion**

¶18.    There are certain times when a principal must indemnify an agent, even if there is no written contract guaranteeing indemnification. Indemnity is proper if an agent suffers a loss that fairly should be borne by its principal; this determination is for a jury. This indemnification includes costs and fees associated with defending the primary suit against her and in establishing that her principal should indemnify her. However, indemnification is limited to a reimbursement for those fees and expenses that are actually incurred and does not include other damages, such as damages for emotional distress or punitive damages.

¶19.    Accordingly, the trial court is reversed and rendered regarding the award of damages to McCraw for emotional distress; reversed and remanded for a determination of whether McCraw has suffered a loss that fairly should be borne by General American; and affirmed regarding McCraw's cross-appeal of the JNOV dismissing punitive damages against General American.

7

¶20.   **ON DIRECT APPEAL: REVERSED & REMANDED IN PART; REVERSED & RENDERED IN PART.  ON CROSS-APPEAL: AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.  EASLEY, J., NOT PARTICIPATING.**